IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Tammy Lipperman, | ) | Civil Action No. 8:12-cv-02635-DCN-JDA |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Carolyn W. Colvin,[1] | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(a), D.S.C.[2]  Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) to obtain judicial review of a final decision of Defendant Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claims for disability insurance benefits ("DIB").[3]  For the reasons set forth below, it is recommended that the decision of the Commissioner be affirmed.

## PROCEDURAL HISTORY

In August 2007, Plaintiff filed an application for DIB alleging an onset of disability date of April 1, 2005.  [R. 175–82.]  The claim was denied initially and on reconsideration by the Social Security Administration ("the Administration").  [R. 121–25, 127–33.]  A timely

---

[1]Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as Defendant in this suit.  No further action need be taken to continue this suit by reason of the last sentence of § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2]A Report and Recommendation is being filed in this case in which one or both parties declined to consent to disposition by a magistrate judge.

[3]Section 1383(c)(3) provides, "The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."  42 U.S.C. § 1383(c)(3).

request for rehearing was made, and on January 26, 2011, administrative law judge ("ALJ") Thomas G. Henderson held a hearing on Plaintiff's claim. [R. 49–81.] The ALJ issued a decision on April 14, 2011, finding Plaintiff not disabled under the Social Security Act ("the Act") through September 30, 2008, the last date insured. [R. 9–24.]

At Step 1,[4] the ALJ found Plaintiff met the insured status requirements of the Act through September 30, 2008 and had not engaged in substantial gainful activity during the period from her alleged onset date of April 1, 2005, through her date last insured of September 30, 2008. [R. 14 , Findings 1 & 2.] At Step 2, the ALJ found Plaintiff had the following severe impairments: C6-7 disc herniation without radiculopathy and generalized anxiety. [R. 14, Finding 3.] At Step 3, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the criteria of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. 14, Finding 4.] The ALJ specifically considered Listings 1.04 and 12.06. [R. 14–15.] The ALJ also considered the combined effects of Plaintiff's impairments and determined that the findings related to them are not at least equal in severity to those described in listings 1.04 and 12.06. [R. 15.]

Before addressing Step 4, Plaintiff's ability to perform her past relevant work, the ALJ found Plaintiff retained the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). Specifically, the claimant was able to lift and carry up to 20 pounds occasionally and 10 pounds frequently

---

[4]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

2

and stand, walk, and sit for 6 hours in an 8-hour day except that the claimant could never reach overhead, and could not have rigid quotas or fast-paced production.

[R. 15, Finding 5.]   Based on this RFC, the ALJ determined at Step 4 that Plaintiff was unable to perform her past relevant work [R. 18, Finding 6]; however, considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there were jobs that existed in significant numbers in the national economy that the Plaintiff could perform.   [R. 18, Finding 10.]   Consequently, the ALJ concluded Plaintiff was not under a disability as defined by the Act from April 1, 2005, the alleged onset date, through September 30, 2008, the date last insured.   [R. 19, Finding 11.]

Plaintiff requested Appeals Council review of the ALJ's decision, but the Council declined review.[5]   [R. 1–6.]   Plaintiff filed this action for judicial review on September 13, 2012.   [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends the ALJ's decision is not supported by substantial evidence and claims the ALJ

(1)    failed to list Plaintiff's iron-deficiency anemia as a medically determinable impairment [Doc. 19 at 3–6];

(2)    failed to identify all relevant listed impairments [*id.* at 6–7];

(3)    failed to adequately develop the record [*id.* at 7–8]; and

(4)    failed to consider the effect of Plaintiff's multiple impairments [*id.* at 8–9].

---

[5]The Appeals Council received the following evidence and made it part of the record:  Exhibit 16E (Representative Brief dated May 11, 2011); Exhibit 15E (Medical Evidence dated July 25, 2006); and Exhibit 16F (Medical Evidence dated December 16, 2002 to December 30, 2008).  [R. 4.]   The Appeals Council concluded that"this information does not provide a basis for changing the Administrative Law Judge's decision."  [R. 2.]

3

The Commissioner, on the other hand, contends the ALJ's decision is supported by substantial evidence because the ALJ

(1)    adequately analyzed Plaintiff's anemia—both individually and in combination with her other impairments—even though he did not explicitly address it at Step 2 [Doc. 22 at 11–16];

(2)    was not required to consider explicitly whether Plaintiff's anemia met or equaled a listing [*id*. at 16–19]; and

(3)    adequately developed the record [*id*. at 19–20].

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963)) ("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court. *Craig v. Chater*, 76

4

F.3d 585, 589 (4th Cir. 1996); *see also  Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision).   Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano*, 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).   Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'"  *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)).   Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose."  *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g).  *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir.

1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled). Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four may be appropriate to allow the Commissioner to explain the basis for the decision. *See Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand."). After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction. *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material

6

and that there is good cause for the failure to incorporate such
evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g). A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[6] With remand under sentence six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98. The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings. *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an

---

[6]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence. *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992). Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect. *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990). Accordingly, the Court will apply the more stringent *Borders* inquiry.

7

order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C.

§ 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured

for benefits, who are not of retirement age, who properly apply, and who are under a

disability.  42 U.S.C. § 423(a).  "Disability" is defined as:

> the inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or which
> has lasted or can be expected to last for a continuous period
> of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.     The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations

have reduced the statutory definition of disability to a series of five sequential questions.

*See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency"

in considering disability claims).   The ALJ must consider whether (1) the claimant is

engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the

impairment meets or equals an impairment included in the Administration's Official Listings

of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents

the claimant from performing past relevant work; and (5) the impairment prevents the

claimant from having substantial gainful employment.  20 C.F.R. § 404.1520.  Through the

fourth step, the burden of production and proof is on the claimant.  *Grant v. Schweiker*, 699

F.2d 189, 191 (4th Cir. 1983).  The claimant must prove disability on or before the last day

8

of her insured status to receive disability benefits. *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969). If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience. *Grant*, 699 F.2d at 191. If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.    *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. § 404.1572(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* § 404.1572(b). If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity. *Id.* § 404.1574–.1575.

### B.    *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. *See id.* § 404.1521. When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments. 42 U.S.C. § 423(d)(2)(B). The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that,

9

when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them"). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments."). If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. § 423(d)(2)(B).

### C.    *Meets or Equals an Impairment Listed in the Listings of Impairments*

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. § 404.1509, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience.[7] 20 C.F.R. § 404.1520(d).

### D.    *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant." *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995). At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[8] with the physical and mental demands of the kind

---

[7]The Listing of Impairments is applicable to SSI claims pursuant to 20 C.F.R. §§ 416.911, 416.925.

[8]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

10

of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work.  20 C.F.R. § 404.1560(b).

### E.    *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  *See* 20 C.F.R. § 404.1520(f)–(g); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).  To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids").  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[9]  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations).  When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines.  *Gory*, 712 F.2d at 931.  In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work.  20 C.F.R. § 404.1569a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to

---

[9] An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. §§ 404.1569a(a), 416.969a(a).  A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands.  *Id.*  Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing.  20 C.F.R. §§ 404.1569a(c)(1), 416.969a(c)(1).

prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy."). The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker*, 889 F.2d at 50. For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Id.* (citations omitted).

## II.    Developing the Record

The ALJ has a duty to fully and fairly develop the record. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). The ALJ is required to inquire fully into each relevant issue. *Snyder*, 307 F.2d at 520. The performance of this duty is particularly important when a claimant appears without counsel. *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980). In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (internal quotations and citations omitted).

### III.    Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).  The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. § 404.1527(c).  Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition

for a prolonged period of time"); 20 C.F.R. § 404.1527(c)(2). An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways. *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986). Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. 20 C.F.R. § 404.1527(d). However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. *Id.*

## IV.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 404.1517; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986). The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability. 20 C.F.R. § 404.1517. Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary. *Id.*

## V.    Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the

14

pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  In evaluating claims of disabling

pain, the ALJ must proceed in a two-part analysis. *Morgan v. Barnhart,* 142 F. App'x 716,

723 (4th Cir. 2005) (unpublished opinion).  First, "the ALJ must determine whether the

claimant has produced medical evidence of a 'medically determinable impairment which

could reasonably be expected to produce . . . the actual pain, in the amount and degree,

alleged by the claimant.'" *Id.* (quoting *Craig*, 76 F.3d at 594).  Second, "if, and only if, the

ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as

a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged

pain." *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the

Fourth Circuit, it is well established that "subjective complaints of pain and physical

discomfort could give rise to a finding of total disability, even when those complaints [a]re

not supported fully by objective observable signs." *Coffman v. Bowen*, 829 F.2d 514, 518

(4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)).  The ALJ

must consider all of a claimant's statements about his symptoms, including pain, and

determine the extent to which the symptoms can reasonably be accepted as consistent

with the objective medical evidence.  20 C.F.R. § 404.1528.  Indeed, the Fourth Circuit has

rejected a rule which would require the claimant to demonstrate objective evidence of the

pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the

Commissioner to promulgate and distribute to all administrative law judges within the circuit

a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v.*

*Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990).  The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
>
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence.  If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability.  Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered.  Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990).  SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p.  *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996).  SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms."  *Id.* at 34,485; *see also* 20 C.F.R. § 404.1529(c)(1)–(c)(2) (outlining evaluation of pain).

16

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the record.  Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria.  *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor.  But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

**Plaintiff's Iron-Deficiency Anemia**

Plaintiff contends the ALJ erred by failing to recognize Plaintiff's iron-deficiency anemia as a medically determinable impairment. [Doc. 19 at 3–6.]  However, a review of the ALJ's decision reveals the ALJ considered Plaintiff's anemia when considering her RFC and determining the effects of her impairments on her ability to work.[10]  For example, the ALJ noted,

> The claimant has sought and received minimal treatment, with
> relatively normal findings.  The claimant visited the Cleveland

---

[10] The ALJ did not make a finding that Plaintiff's anemia was not a medically determinable impairment.  The ALJ, however, did not include Plaintiffs anemia in his discussion at Step 2 when he considered Plaintiff's severe and non-severe impairments.

Clinic in March 2006. Although the claimant was diagnosed with iron deficiency secondary to excessive menstruation, she has responded well to iron therapy. (Exhibit 5F). She was found to be much improved by the end of September 2007. At that time, the claimant was found to be well-nourished, well-developed, and in good physical condition. The claimant's spine was straight and non-tender.

In August 2008, the claimant was normal upon examination. (Exhibit 10F). The claimant complained of anemia and chest pain. Dr. Joel Godard noted that the claimant's stress tests have all been normal, and that smoking cessation would relieve her chest pain symptoms. The claimant was not prescribed treatment for her anemia at that time.

[R. 17.]

When questioned about her anemia at the hearing before the ALJ, Plaintiff testified that her anemia caused her to bruise easily and to be tired. [R. 59.] She also testified that having a hysterectomy made a big difference. [R. 60.] When asked whether her anemia has improved at all, Plaintiff represented that "it goes up and down" and that "[i]t's not such a big deficit, but I take my iron pills and my vitamins every day." [R. 69.]

While the better practice would have been to include a discussion of Plaintiff's anemia at Step 2, explaining why it was not considered either a severe or non-severe impairment, the Plaintiff has failed to point to evidence in the record by which the Court can conclude that her anemia had any affect on her ability to work or to establish that the ALJ's failure to find her anemia to be a medically determinable ailment is reversible error. Accordingly, the Court is unable to conclude that the ALJ's decision to exclude Plaintiff's anemia from the discussion at Step 2 constitutes reversible error when her anemia was considered during the RFC analysis.

**Listing Analysis**

Plaintiff next argues the ALJ erred by failing to analyze Plaintiff's anemia under Listing 7.02.  [Doc. 19 at 6-7.]  Plaintiff contends that the ALJ's "failure to identify the Plaintiff's iron-deficiency as a medically determinable impairment makes it impossible to determine whether or not his findings and conclusions at the second step of the five-step sequential process are supported by the substantial evidence of record."  [*Id.* at 7.]  The Commissioner contends that there was insufficient evidence in the record to even trigger a duty to consider Listing 7.02.  [Doc. 22 at 18.]

 To determine whether a claimant's impairments meet or equal a listed impairment, the ALJ identifies the relevant listed impairments and compares the listing criteria with the evidence of the claimant's symptoms.  *See Cook*, 783 F.2d at 1173 (stating that without identifying the relevant listings and comparing the claimant's symptoms to the listing criteria, "it is simply impossible to tell whether there was substantial evidence to support the determination").  "In cases where there is 'ample factual support in the record' for a particular listing, the ALJ must provide a full analysis to determine whether the claimant's impairment meets or equals the listing."  *Beckman v. Apfel*,  No. WMN-99-3696, 2000 WL 1916316, at *9 (D. Md. Dec. 15, 2000) (unpublished opinion) (quoting *Cook*, 783 F.2d at 1172).  While the ALJ may rely on the opinion of a State agency medical consultant in conducting a listing analysis, 20 C.F.R. § 404.1527(f)(2)(iii), the ALJ ultimately bears the responsibility for deciding whether a claimant's impairments meet or equal a listing, *id.* § 404.1527(e)(2).

Listing 7.02 requires Plaintiff to demonstrate chronic anemia (hematocrit persisting at 30 percent or less due to any cause) with:

> A.    Requirement of one or more blood transfusions on an average of at least once every 2 months; or
>
> B.    Evaluation of the resulting impairment under criteria for the affected body system.

20 C.F.R. Part 404, Subpart P, App. I, § 7.02.  The Court notes that the medical evidence does not support a finding that Plaintiff's hematocrit levels persisted at 30% or less. Medical records submitted to the Appeals Council indicate that Plaintiff's hematocrit levels were below 30% on at least one occasion in March 2007.  [R. 512.]  Records from August and September 2007 indicate hematrocit levels measuring above 40%.  [R. 360–61.] Additionally, there is no indication that Plaintiff ever required a blood transfusion or that her impairment affected another body system, as required by Listing 7.02.  Plaintiff has simply not presented any evidence to show that she met or equaled Listing 7.02; thus, any failure to consider this listing is harmless.  *See Glasgow v. Astrue*, Civil Action No. 3:09-2065-RMG-JRM, 2011 WL 825733, at *8 (D.S.C. 2011) (Plaintiff has simply not presented any evidence to show that he met or equaled the Listing at § 11.14 such that any failure to consider this listing is harmless.").

**Developing the Record**

Plaintiff contends the ALJ failed to adequately develop the record because he did not inquire into all relevant facts and issues related to her anemia.  [Doc. 19 at 8.]  Plaintiff contends the evidence of record shows Plaintiff still suffers with a blood disorder and that the ALJ ignored this fact.  [*Id.*]

20

Although "the ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record," *Cook*, 783 F.2d at 1173, "the ALJ is not required to function as the claimant's substitute counsel, but only to develop a reasonably complete record," *Clark v. Shalala*, 28 F.3d 828, 830–31 (8th Cir. 1994). The ALJ must make a reasonable inquiry into a claim of disability; he has no duty to "go to inordinate lengths to develop a claimant's case." *Thompson v. Califano*, 556 F.2d 616, 618 (1st Cir. 1977).

In this case, the ALJ discharged his duty by questioning Plaintiff about all relevant matters and reviewing the medical records. In addition, the ALJ left the record open in this case for an additional thirty days to allow Plaintiff to submit additional records.[11] [R. 80.] Following the hearing, Plaintiff submitted to the Appeals Council a brief dated May 11, 2011, as well as additional evidence that included medical records from July 25, 2006 and from December 16, 2002 to December 30, 2008. [R. 4.] Further, the Court finds the ALJ did not err is failing to explore medical evidence supporting Plaintiff's alleged blood disorder; Plaintiff's claim of having a blood disorder is not supported by the medical evidence as suggested.[12] Additionally, the Court can find no gaps in Plaintiff's medical records that the ALJ left unexplored that would be considered prejudicial given the limitations on the court's scope of review. *See Fleming v. Barnhart*, 284 F. Supp. 2d 256,

---

[11] Prior to the hearing before the ALJ, Plaintiff was given the opportunity to submit additional evidence for consideration. [R. 263.] After the hearing, Plaintiff was given until February 28, 2011 to submit additional records; on February 28, 2011, however, Plaintiff sought an extension of time, until April 1, 2011, to submit additional records. [R. 267.]

[12] While Plaintiff suggests that she has a diagnosed blood disorder, the medical record cited by Plaintiff indicates that Plaintiff "claims she had some type of blood disorder, which she calls 'SR2-1.'" [R. 420.] She also claimed that "she was on chemotherapy and had to have iron infusions." [*Id.*] The medical record specifically notes, however, "we have no records of any of this." [*Id.*]

275–76 (D. Md. 2003) (finding the ALJ did not adequately develop the record where the ALJ found no disability in opposition to recommendation of treating physician and failed to obtain substantial amount of relevant medical records).  Accordingly, the Court finds that there was adequate evidence in the record for the ALJ to make his decision, and the ALJ appropriately discharged his duty.  *See Walker v. Harris*, 642 F.2d 712, 714 (4th Cir. 1981) (noting that the ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record and cannot rely only on the evidence submitted by the claimant when that evidence is inadequate).

**Combination of Impairments**

Finally, Plaintiff contends that the ALJ's failure to list Plaintiff's anemia as a severe impairment necessarily means he did not consider it in combination with Plaintiff's two listed severe impairments.[13]  [*Id.* at 9.]

As stated in the Act:

> In determining whether an individual's physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under this section, the Commissioner of Social Security shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity.

42 U.S.C. § 423(d)(2)(B).  If an ALJ finds a claimant has a severe impairment or combination of impairments, the ALJ must consider all of the claimant's impairments, including non-severe impairments and the limitations imposed by all the claimant's

---

[13]Here, Plaintiff's argument is that the ALJ failed to find her anemia to be severe.  The Court notes this is not the same argument as previously discussed, where Plaintiff argued the ALJ failed to find her anemia to be a medically determinable ailment.

impairments, at the remaining steps of the sequential analysis. *Id.*; SSR 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). Further, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *Walker*, 889 F.2d at 50 ("As a corollary to th[e] rule [that the ALJ must evaluate the combined effect of the claimant's impairments], the ALJ must adequately explain his or her evaluation of the combined effects of the impairments." (citing *Reichenbach v. Heckler*, 808 F.2d 309, 312 (4th Cir. 1985)).

At Step 3, the ALJ determined that Plaintiff's disc herniation without radiculopathy did not meet or medically equal Listing 1.04, which requires that a disorder of the spine result in compromise of a nerve root or the spinal cord with evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication. [R. 14.] The ALJ concluded Plaintiff's impairment did not meet Listing 1.04 because MRI examinations failed to reveal any significant herniations, stenosis or nerve root impingement. [*Id.*] Additionally, the ALJ found that Plaintiff's anxiety did not meet or medically equal Listing 12.06. [R. 15.] The ALJ considered "paragraph B" criteria and determined that Plaintiff's mental impairment resulted in mild restriction of activities of daily living; moderate difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation which have been of extended duration. [*Id.*] The ALJ concluded that "[b]ecause the claimant's mental impairment did not cause at least two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decompensation, each of extended duration, the 'paragraph B' criteria were not satisfied." [*Id.*] The ALJ also considered the "paragraph C" criteria and

found that Plaintiff failed to establish the presence of "paragraph C" criteria as well.  [*Id.*] The ALJ went on to conclude that

> Moreover, I have considered the combined effects of the claimant's impairments, both severe and non-severe, and have determined that the findings related to them are not at least equal in severity to those described in listings 1.04 and 12.06. In this regard, I have specifically considered the cumulative effects of the impairments on the claimant's ability to work. *See* Walker v. Bowen, 889 F.2d 47 (4th Cir. 1989). I note that the claimant's alleged mental impairments, when combined with her alleged physical impairments, failed to diminish her overall level of functioning any more than when her impairments were considered individually.

[*Id.*]

During the RFC analysis, the ALJ addressed Plaintiff's anemia, recognizing that Plaintiff was "diagnosed with iron deficiency secondary to excessive menstruation and [] has responded well to iron therapy. (Exhibit 5F)."  [R. 17.]  The ALJ also noted that medical records showed that Plaintiff's anemia was found to be much improved by the end of September 2007.  [*Id.*]  As stated above, Plaintiff testified that her anemia was "not such a big deficit", but that "she takes [her] iron pills and vitamins every day."  [R. 69.]

Upon review of the ALJ's decision, the Court finds that the ALJ adequately considered the cumulative effects of the combination of Plaintiff's impairments either in considering the Listings or in his discussion of Plaintiff's RFC.  While the ALJ did not discuss Plaintiff's anemia during Step 2, he did address her anemia during the RFC analysis and failed to find any limitation associated with the anemia.  Further, Plaintiff has offered no explanation of how more discussion of her combined impairments may have changed the outcome of this case or identified any additional restrictions that would flow from her combined impairments.  A condition that does not result in any functional

24

impairment is not relevant to the RFC analysis. For these reasons, the court finds the ALJ's RFC determination sufficiently addressed Plaintiff's combined impairments. See *Thornsberry v. Astrue*, C.A. No. 4:08-4075-HMH-TER, 2010 WL 146483, at *5 (D.S.C. Jan. 12, 2010) (finding that "while the ALJ could have been more explicit in stating that his discussion dealt with the combination of [the plaintiff's] impairments, his overall findings adequately evaluate the combined effect of [the plaintiff's] impairments").

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that the Commissioner's decision be affirmed.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

February 10, 2014
Greenville, South Carolina